IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                        Case Nos.:     3:06cr460/MCR
                                                          3:09cv455/MCR/EMT

BETTY SYLVESTER

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law (docs. 140, 141). The Government has filed a response (doc. 146), and Defendant has filed a reply (doc. 148). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied and dismissed.

### BACKGROUND

Defendant Betty Sylvester and co-Defendant Dashane Laurel were charged in a two-count indictment with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine (Count One) and possession with intent to distribute 500 grams or more of cocaine on a date certain (Count Two) (doc. 13). The Government filed a notice of enhancement information, listing two prior felony drug convictions, one of which was later found to be a misdemeanor (doc. 23). The court granted the Government's motion to sever the trials, which motion was predicated upon its intent to use Dashane Laurel's post-arrest statement/confession in its case against Defendant

Laurel, because this statement would have incriminated both Sylvester and Laurel (docs. 24, 25). Defendant Sylvester, represented by appointed counsel Spiro Kypreos, filed a motion to suppress custodial statements she allegedly made claiming that she had not been advised of her rights (doc. 26). The motion was denied after a response by the Government and a hearing at which Defendant testified in her own behalf (docs. 27, 31, 44, 45, 108 at 33–35).

Defendant was convicted on both counts of the indictment after a jury trial (docs. 49, 52). The trial evidence was summarized in great detail by both Defendant and the Government in the instant pleadings and need not be repeated at such length herein (docs. 141 at 8–12; 146 at 2–6). Briefly, however, the evidence established that Defendant Sylvester began selling cocaine to government witness Byron Washington within days of his release from prison in April of 2005. At first, Washington traveled to Atlanta where Defendant resided to acquire the cocaine, but once he was placed on house arrest, Defendant traveled to Florida to make deliveries, for an additional fee. Defendant initially traveled alone, but after having been robbed, she began bringing someone else with her, and nine times out of ten that individual was co-Defendant Dashane Laurel, who was also from Atlanta. Washington estimated that he obtained between 100 and 150 kilograms of cocaine from Defendant in five and ten-kilogram increments before he was rearrested in November of 2006. After Washington was arrested, his girlfriend Rosalyn Campbell was in contact with Defendant, and ultimately set up a controlled purchase of two kilograms of cocaine in hopes of helping Washington's case. It was during the course of this controlled purchase that Sylvester and Laurel were arrested in DeFuniak Springs, Florida (*id.*).

The jury specifically found that the conspiracy involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine, and with respect to Count Two that Defendant had possessed five kilograms or more of cocaine (doc. 52). Mr. Laurel was also convicted at a separate jury trial (docs. 55, 57). Defendant did not testify at her trial (*see* doc. 107 at 153–55, 201).

In preparing the Presentence Investigation Report ("PSR"), the Probation Officer calculated Defendant's base offense level as 36 based on her responsibility for 100 kilograms of cocaine powder (PSR ¶ 44). She received a two-level upward adjustment for obstruction of justice for her testimony at the motion to suppress hearing (PSR ¶¶ 38–40, 48) and thus had a total offense level

of 38. Defendant had two criminal history points for two prior controlled substance convictions, only one of which was ultimately determined to be a felony (PSR ¶¶ 65, 66). Her criminal history category was II (PSR ¶¶ 65–67). The applicable advisory guidelines range was thus 262 to 327 months. Defendant objected to the quantity of drugs attributed to her and requested a sentence that reflected the 240-month statutory minimum mandatory rather than the guidelines range (PSR ¶¶ 122–124).

At sentencing counsel renewed his objection to drug weight, but it was overruled (doc. 106 at 3–6). The court specifically inquired whether Defendant admitted a prior felony drug conviction under the name Betty Sanders and she responded in the affirmative (*id.* at 7–8, 9). When given the opportunity to address the court, Defendant asserted that she had been "falsely accused" of some things during the testimony (*id.* at 9). She said that when she had come back to testify "for Dashane Laurel" she overheard Byron Washington and another witness talking about how they set her up, and she denied being their source of cocaine (*id.*). When the court pointed out the trial evidence implicating her in the conspiracy, including audiotape recordings, Defendant said that the only thing she did was bring the two kilograms seized at the time of her arrest (*id.* at 10). The court responded that even this admission gave credibility to Mr. Washington's testimony about her trafficking activities (*id.*). Defendant then said she felt like she was "already hung" when she got here because she had an all-white jury (*id.* at 10, 11), to which the court responded that it did not know that a black person would have considered the evidence any differently than other members of the jury, said it would not argue with Defendant, and noted that the jury had made its finding (*id.* at 11). Defendant said she would not argue, she would just appeal (*id.*). She then made reference to having left Walton County because she was threatened by a police officer nine years ago, and that she was there in court "not on any papers or anything" (*id.* at 10, 11–12). Because it was not clear what point Defendant was making with respect to the current proceedings, the court thanked her for her statement and moved on (*id.* at 12). After hearing further argument from counsel for both parties, the court sentenced her to a term of 294 months as to counts 1 and 2 with each count to run concurrently, a ten-year term of supervised release, and a $200 special monetary assessment (*id.* at 14, 15). The sentence was at the midpoint of the guidelines range, as the court found no departures were appropriate (*id.* at 16).

Defendant appealed, and counsel filed a motion to withdraw on appeal supported by an Anders brief. The Eleventh Circuit's independent review of the entire record revealed counsel's assessment of the relative merit of the appeal to be correct (doc. 123 at 4). It affirmed her convictions and sentence and permitted counsel to withdraw (*id.*). Defendant applied for a petition for writ of certiorari with the United States Supreme Court, which was denied on October 6, 2009. She timely filed the instant motion to vacate pursuant to the prison mailbox rule on September 30, 2009 (doc. 140).

In her motion, Defendant raises three claims of ineffective assistance of counsel and a claim of cumulative error. The Government opposes the motion in its entirety, including Defendant's request for an evidentiary hearing.

## LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981); Hidalgo v. United States, 138 Fed. Appx. 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation

omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); Mills, 36 F.3d at 1055 (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); United States v. Frady, 456 U.S. 152, 165 (1982).  Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).  The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Id., 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Gaskin v. Secretary, Dept. of Corrections, 494 F.3d 997, 1002

(11th Cir. 2007). In applying <u>Strickland</u>, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688; *see also* <u>Dingle v. Secretary for Dept. of Corrections</u>, 480 F.3d 1092, 1099 (11th Cir. 2007). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." <u>Yordan</u>, 909 F.2d at 477 (citing <u>Harich v. Dugger</u>, 844 F.2d 1464, 1469 (11th Cir. 1988); <u>Dingle</u>, 480 F.3d at 1099; <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. <u>Strickland</u>, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); <u>Chandler</u>, 218 F.3d at 1315 (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." <u>Chandler</u>, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369–70 (1993). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart</u>, 506 U.S. at 369 (quoting <u>Strickland</u>, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. <u>Glover v. United States</u>, 531 U.S. 198, 203–04 (2001). A significant

increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for her contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); United States v. Ross, 147 Fed. Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United

States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

**Ground One– Ineffective assistance of counsel–Involuntary decision to proceed to trial**

Defendant asserts that her decision to proceed to trial was involuntary because it was based on counsel's failure to explain the implications of the federal sentencing guidelines to her case. She asserts in her memorandum and supporting affidavit that she would have pleaded guilty to the charged offenses and received a sentence reduction for acceptance of responsibility pursuant to § 3E1.1 U.S.S.G. if counsel had explained how the guidelines would be used to calculate her sentence (doc. 141 at 23; att. 1). Defendant maintains that she was under the impression that she would be held responsible for the drug quantities charged in the indictment[1] and for the drugs she actually possessed at the time of her arrest: two kilograms of cocaine. She states that counsel failed to explain how relevant conduct would be used to calculate the drug quantity for which she was to be held accountable. She faults counsel's failure to advise her that the court would consider "uncharged portion[s] of the alleged drug quantities presented by Government witnesses" (doc. 141 at 24).

Defendant's argument is without merit on many levels. First, the court notes that Defendant relies heavily on United States v. McCoy, 215 F.3d 102 (D.C. Cir. 2000), citing that case for the proposition that "familiarity with the structure and basic content of the Guidelines, [is] a necessity for counsel who seek to give effective representation." *Id.* at 508. Citation of this provision does not strengthen her case. This court is well aware that Defendant's appointed counsel Spiro Kypreos has appeared in federal court as counsel of record in nearly 100 criminal cases since 1989 (*see* doc.

---

[1]It will be recalled that the indictment charged her with conspiracy to possess **five (5) kilograms or more** of cocaine (doc. 13 at 1).

146, att. B), and in these repeated appearances has clearly demonstrated more than a passing familiarity with the sentencing guidelines and their application.

Furthermore, Mr. Kypreos avers that, contrary to Defendant's representation, he advised her in detail how the Sentencing Guidelines worked. He states that he discussed with her how relevant conduct would be included in the drug weight for which she was held accountable, how she could receive a two-level reduction for acceptance of responsibility for pleading guilty, and that depending on how many prior felonies the Government was able to prove, she faced a sentence of from ten years to life to mandatory life (doc. 146, att. B ¶¶ 2–6) . He adamantly states that he **never** advised his client that she would be held accountable only for the two kilograms seized at the time of her arrest (*id.* at ¶ 7). Despite counsel's extensive federal court experience, his assertions alone are not dispositive.

Defendant's asserted desire to plead guilty and receive the benefit of the two-point reduction is not credible in light of her unwillingness to admit to her role in the offense conduct, whether to her own attorney or to the trial court at sentencing. Counsel states in his affidavit that his client refused to acknowledge her guilt, denied that she was a drug dealer, and admitted only that she was in possession of the two kilograms of cocaine she had at the time of her arrest (doc. 146, att. B at ¶ 10). Even this she explained away by stating that she had stolen it from a Mexican with whom she was intimate (*id.*). At sentencing she told the trial court that the only thing she did was transport the "two blocks" that were recovered at the time of her arrest (doc. 106 at 9–10). These "admissions" to counsel and the court failed to include taking responsibility for three kilograms of cocaine that she told law enforcement she had delivered to Jesse Simmons, a customer in Fort Walton Beach, which was the origin of the $60,000 recovered from her vehicle at the time of her arrest (doc. 105 at 58–59; doc. 107 at 33–34). Clearly, Defendant had no desire to cooperate, as established by the transcript of a taped telephone conversation between the incarcerated Defendant and an unidentified male, in which she twice states that she "ain't no snitch" (doc. 146, att. A).

Defendant argues in her reply that the court cannot believe counsel's affidavit over hers merely because he is an attorney and she is incarcerated. Defendant is clearly correct that the analysis is more complex than that. The court must look at the entire record and the totality of the circumstances. As set forth above, under <u>Strickland</u>, establishing a Sixth Amendment violation

based on ineffective assistance of counsel is a two-part inquiry.  Therefore, even assuming for sake of argument that counsel's performance was deficient, in that he failed to explain all the preliminary matters Defendant now contends he did not, Defendant must also show prejudice.

After reviewing the entire record the undersigned concludes that it is highly improbable that the district court could have accepted Defendant's guilty plea.  Before accepting a guilty plea, Rule 11 of the Federal Rules of Criminal Procedure requires that the court determine that the plea is voluntary and that there is a factual basis for the plea.  Fed. R. Crim. P. 11(b)(2) and (3).  This typically requires an admission of guilt (*cf.* North Carolina v. Alford, 400 U.S. 25, 38 & n.10 (1970) (upholding guilty plea by a defendant who maintained his innocence but sought to avoid death penalty in murder case)).  The facts underlying Defendant's case do not lend themselves to an Alford plea, and thus she would have been required to admit her guilt with reference to more than just possession of the two kilograms of cocaine seized at the time of her arrest.  Even in the instant collateral proceedings she has failed to clearly admit further responsibility.  Defendant states in her reply memorandum that at the time she admitted "what *she believed her involvement was*" (doc. 148 at 9), which she explains as the two kilograms of cocaine she stole from "the Mexican" that were seized at the time of her arrest.  She asserts that because of this, "the government's position that she was unwilling or unable to admit her involvement is misplaced" and reiterates that she "admitted her total involvement to counsel based on what her perception of her involvement was at the time" (*id.*).  Although one interpretation of these statements could be that Defendant now believes her involvement to be more than what she previously admitted, the relevant time frame in which she would have been required to make a satisfactory admission of guilt is at the time of her trial.  The elements of conspiracy under § 846 are (1) an agreement between the defendant and one or more persons, (2) to either commit an unlawful act, or to commit a lawful act by unlawful means.  United States v. Arias-Izquierdo, 449 F.3d 1168, 1182 (11th Cir. 2006) (*citing* United States v. Toler, 144 F. 3d 1423, 1426 (11th Cir. 1998)).  Defendant also denied involvement in a conspiracy.

In sum, there is nothing in the record to indicate that Defendant's "perception" of her involvement would have been sufficient to support a guilty plea to the two charges in the indictment.  Her assertion that she "would have pleaded guilty" may evidence post-sentencing remorse and

disappointment in her sentence as a first time federal offender, rather than an accurate depiction of her state of mind at the relevant time.[2]

**Ground Two–Ineffective assistance of counsel–Failure to advise of plea agreement**

Defendant asserts that counsel failed to advise her that a plea agreement was offered that would have "limited" her exposure to the charged offense. She appends a copy of the proposed plea agreement to her motion (doc. 141, att. B), and claims that she saw it for the first time among the documents that were located in counsel's file when she was preparing her § 2255 motion.[3] Defendant's understanding of the contents of the proposed agreement is flawed. The agreement appears to be nothing more than the standard plea and cooperation agreement that is routinely used in this court. There is nothing in it that supports Defendant's assertion that her sentence would be limited to the statutory mandatory minimum. In fact, the agreement specifically states that the sentence to be imposed would be left to the discretion of the district court limited only by the statutory **maximum** sentence (doc. 141, att. B at 5). And, most significantly, the agreement required Defendant to cooperate "fully and truthfully" with the Government (doc. 141 at att. 2 at 6), something that, to this day, Defendant has never expressed a willingness to do.

In his affidavit Mr. Kypreos indicates that contrary to Defendant's assertions he informed her of the opportunity to enter into a plea and cooperation agreement with the Government on more than one occasion, and in fact urged her to do so, as he believed it was in her best interest (doc. 146, att. B at 4). This statement is supported by a January 25, 2007 letter that counsel sent to his client in which he outlines the penalties she faces based on her criminal history, tells her that her best opportunity to avoid a mandatory life sentence would be to enter into a plea and cooperation

---

[2]The court also notes that Defendant would not have avoided accountability for relevant conduct by entering a guilty plea. She would have been held accountable for the same amount of cocaine, regardless of whether she went to trial or pleaded guilty in light of Byron Washington's cooperation with the Government.

[3] In light of Defendant's sworn assertion at the suppression hearing that she cannot read and write (doc. 108 at 20, 23, 24–25), the court cannot fully credit her assertion that she "never saw" the agreement.

agreement and cooperate with the Government, and urges her to "reconsider [her] decision" to go to trial (*id.* at exh. 1).

Defendant asserts in her reply that she never received the January 25, 2007 letter submitted by counsel, and she disputes most of the contents of the letter. She claims that she was never aware that a mandatory life sentence could be imposed, as counsel suggests through his statement "[y]ou are absolutely correct in noting that if you plead guilty you will face a mandatory life sentence" (doc. 146, att. B, exh. 1). Defendant also claims, incorrectly, that the letter calls into question counsel's understanding of the sentencing guidelines. Counsel's letter was both factually accurate and in accordance with the proposed plea agreement that Defendant herself attached to her original motion. With two felony convictions, Defendant would have been subject to a mandatory life sentence, absent cooperation with the Government (doc. 141, att. B at 2). Because Defendant was ultimately found to have only a single prior felony conviction, she faced a significantly shorter mandatory minimum term of twenty (20) years imprisonment, as was set forth in both the proposed plea agreement and the PSR (*id.*; PSR ¶ 97). Defendant's next assertion, that counsel's letter suggests that she was not actually presented with a plea agreement, is not supported by the text of the letter. Nor is her assertion that the letter does not establish that she rejected the Government's offer, as counsel clearly asks her to "reconsider" her decision.

Finally, as set forth in the previous section, assuming for sake of argument that Defendant is correct and counsel failed to communicate the existence of the proposed plea and cooperation agreement to her, because of Defendant's expressed unwillingness to cooperate and her unwillingness to admit her guilt, she would not have been able to enter into the agreement. Thus, there was no prejudice, and she has not shown ineffective assistance of counsel under <u>Strickland</u>.

**Grounds Three–Ineffective assistance of counsel–Failure to object to enhancement**

Defendant asserts that counsel failed to object to the improper enhancement for obstruction of justice which stemmed from her statements during the hearing on her motion to suppress prior to trial. Defendant argues that the mere fact that she contested the validity of the custodial interrogation does not prove that she willfully obstructed the administration of justice, and that her conduct, testifying contrary to the law enforcement agents at the suppression hearing, was not the sort of conduct contemplated by the guidelines to warrant an obstruction adjustment.

Section 3C1.1 of the guidelines provides for a two-level increase "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." According to paragraphs 39 and 40 of the PSR, Defendant's adjustment was based on her provision of materially false information to the court during the suppression hearing, which is one of the specific examples of covered conduct contained in the guidelines commentary. U.S.S.G. § 3C1.1, comment. (n.4(F)).[4] In order for the sentencing adjustment to apply, the Government need only establish the underlying facts necessary by a preponderance of the evidence. United States v. Perez-Oliveros, 479 F.3d 779 (11th Cir. 2007); United States v. Askew, 193 F.3d 1181, 1183 (11th Cir. 1999).

At the suppression hearing, although the court did not make a specific finding that Defendant had perjured herself, the court credited the testimony of five law enforcement officers who stated that Defendant had been read her rights, over that of Defendant, who said she either could not recall if she had been read her rights, or that she did not understand her rights (doc. 108 at 23–24, 29). The Assistant United States Attorney noted that Defendant had previously been through the criminal justice system, that she recalled being read her rights in the early 1990's but could not recall events from two months earlier, and suggested Defendant was a victim of selective memory (doc. 108 at 31–32). The Government's counsel also argued that Defendant's claim of a lack of understanding was lacking in credibility in light of the evidence of Defendant's capability and concern for her business dealings (*id.* at 32–33).

Despite the lack of an express finding that Defendant's testimony was perjured, there is evidence in the record to support a finding by a preponderance of the evidence that the two-level adjustment is warranted. In light of this, any objection advanced by counsel to this adjustment would have been futile. It is well established that counsel is not ineffective for failing to preserve or argue a meritless claim. *See, e.g.,* Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by

---

[4]"[C]ommitting, suborning or attempting to suborn perjury" is also covered conduct. U.S.S.G. § 3C1.1, comment. (n. 4(B)).

prosecutor, or accurate statements by prosecutor about effect of potential sentence); <u>Meeks v. Moore</u>, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit). Therefore, again, Defendant has failed to show she is entitled to relief.

**Ground Four– Cumulative error**

Defendant's last ground for relief is a claim of cumulative error. It is true that the cumulative effect of several errors that are harmless by themselves could so prejudice a defendant's right to a fair trial that a new trial might be necessary even if the errors considered individually are non-reversible. *See, e.g.*, <u>U.S. v. Ramirez,</u> 426 F.3d 1344, 1353 (11th Cir. 2005); <u>United State v. Preciado-Cordobas</u>, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993) (citing <u>United States v. Pearson</u>, 746 F.2d 787, 796 (11th Cir. 1984)). However, the cumulative error doctrine is inapplicable where the district court commits no individual errors. <u>United States v. Waldon</u>, 363 F.3d 1103, 1110 (11th Cir. 2004); <u>United States v. Barshov</u>, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); <u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987) (noting that increasing the number of non-meritorious claims raised will not support a finding of cumulative error because "Twenty times zero equals zero."). Moreover, the Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims.[5] Regardless, having found no error in any of Defendant's previously raised claims, there can be no cumulative error, and she is not entitled to relief.

**CERTIFICATE OF APPEALABILITY**

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant,"

---

[5]The Eleventh Circuit recently noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel." <u>Forrest v. Fla. Dep't of Corr.</u>, 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009) (unpublished). The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 5 (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

The motion to vacate, set aside, or correct sentence (doc. 140) be **DENIED.**

At Pensacola, Florida, this 23<u>rd</u> day of November 2011.

/s/ *Elizabeth M., Timothy*
**ELIZABETH TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**